GEORGE M. THOMPSON *vs.* JULIUS TWISS ET AL. (JULIUS
TWISS ET AL. APPEAL FROM COMPENSATION COM-
MISSIONER).

\* First Judicial District, Hartford, March Term, 1916.
PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, Js.

Assignments of error in respect to findings of fact should be addressed to
the specific paragraphs of the finding which it is desired to have
corrected.

A draft-finding should include only such facts as are claimed to have
been established by the evidence; and therefore a statement to the
effect that the facts testified to by a certain witness are true, has
no proper place in such a finding.

Upon an appeal from an award of a Compensation Commissioner his
finding, unless corrected by the Superior Court, should be adopted
by reference and made a part of its record, without any other or
further refinding or statement of the facts. If the commissioner's
finding is corrected, the corrections so made should be indicated
in the finding of the Superior Court.

If that court finds no harmful error in the conclusions and award of the
commissioner, it should dismiss the appeal. If, however, such error
is found and the award can be modified or changed without a
further hearing, the appeal should be sustained to that extent and
the commissioner should be directed to correct the award accord-
ingly. Should a further hearing be necessary, the appeal should be
sustained and the cause remanded to the commissioner to be pro-
ceeded with in accordance with the judgment, or memorandum of
decision, of the Superior Court.

An independent contractor is one who undertakes to do a specific piece
of work with his own men and in his own way, without any right
of interference or control upon the part of the employer.

In the present case the defendant landowner engaged the plaintiff to
develop and improve his land, furnishing him with explosives and
most of the tools required, and handing him, usually weekly, the
sum of his own daily wages and the aggregate amount of the wages
of most, but not all, of the men employed by him. No definite
amount of work was called for, no time was fixed for its completion,
and no sum was agreed upon as the price of the job, the direction
and control of which was retained by the owner who kept adding
to the improvements from time to time as he saw fit. *Held:*—

---

\* Transferred from the third judicial district.

Thompson *v.* Twiss.

1. That the relation thus established between the parties was that of employer and employee and not that of owner and independent contractor.
2. That under our Workmen's Compensation Act as amended by chapter 288, § 22, of the Public Acts of 1915, only a "casual" employee who "is employed otherwise than for the purpose of the employer's trade or business," was barred from the privileges of the Act; and that inasmuch as the plaintiff's employment was not only regular, stable and likely to last at least for several weeks, but was also for the purpose of assisting in one branch or department of the employer's business, the plaintiff was not excluded from the benefits of the Act.

A "casual employment," under the amendment of 1915, is one that is occasional or incidental, one that occurs at uncertain or irregular intervals.

In an action by a "casual" employee to recover damages for a personal injury, the employer may avail himself of his common-law defenses.

Argued March 14th—decided April 19th, 1916.

APPEAL by the respondents from a decision and award of the Compensation Commissioner of the third district in favor of the claimant, taken to and heard by the Superior Court in New Haven County, *Webb, J.;* upon the facts as found by the commissioner, which the court adopted as its finding, judgment was rendered dismissing the appeal and confirming the award, from which the respondents appealed. *No error.*

*Ralph H. Clark,* for the appellants (respondents).

*James E. Wheeler,* for the appellee (claimant).

WHEELER, J. The respondents, upon the denial of their motion to correct the finding, filed certain exceptions to the finding, and assign these as the first and second grounds of their appeal.

The first ground, that "the court erred in finding the facts set forth in part first of the finding," is general and not specifically addressed, as it should have been, to such paragraphs of the finding of the commissioner

and made a part of the finding of the Superior Court, as the respondents desired to have corrected.

The second ground, that the facts as testified to by a certain witness are true, had no place in the draft-finding, which should include only the facts claimed to have been established by the evidence.

The practice upon appeals of this nature is not yet settled. Accordingly, we have examined with some care the transcript of the evidence, and we may say that had the particular parts of the finding whose correction was pressed in argument been properly before us, we could not have held as matter of law that the trial court committed any harmful error of law in refusing to correct the finding of the commissioner. The power of the Superior Court in the correction of a finding of the compensation commissioner is analogous to, and its method of correcting the finding similar to, the power and method of this court in correcting the finding of the Superior Court. Upon an appeal from an award of a commissioner the Superior Court, unless it corrects the finding of the commissioner, should merely, in its finding, make that finding a part of its record, without refinding the facts or making them the finding of facts for the purpose of appeal. If the trial court corrects the finding it should indicate in its finding on appeal the corrections so made in the finding of the commissioner. If the trial court finds no harmful error in the appeal from the commissioner, it should dismiss the appeal. If it finds harmful error either in a conclusion of law or of fact, or in the finding of a material fact or the refusal to find a material fact, it should, if the award may be changed or modified without requiring a further hearing, sustain the appeal to this extent, and direct the commissioner to make the award in accordance with its direction. If the award cannot be changed or modified in accordance with the con-

clusions of the trial court without further hearing upon the facts, it should sustain the appeal and indicate in the judgment or its memorandum the grounds of its action.

In reality there are two questions of law raised on this appeal, which we shall consider in order. 1. Whether the relation between Mr. Thompson, the claimant, and Mr. Twiss, was that of employer and employee within the meaning of the Compensation Act. The respondents' contention that this relationship did not exist, is predicated upon their claim that upon the facts found the relationship was that between an independent contractor and his contractee. 2. Whether the employment of the claimant was casual in its nature.

When the doing of a specific piece of work is entrusted to one who exercises an independent employment and selects his own help and has the immediate control of them, and the right to control the method of conducting the work, the contractor is an independent contractor. *Alexander* v. *Sherman's Sons Co.*, 86 Conn. 292, 297, 85 Atl. 514; *Norwalk Gas Light Co.* v. *Norwalk*, 63 Conn. 495, 525, 28 Atl. 32. The decisive test is who has the right to direct what shall be done and when and how it shall be done? Who has the right to the general control? There are characteristics of a general contractor which are suggestive but not controlling. He is ordinarily one who carries on an independent employment. His contract relates to a given piece of work and for a given price. He is responsible for the results of his work.

Neither the principle, nor its application to the facts of this case, is uncertain. Mr. Twiss, for the purpose of developing his land in Westville, engaged Mr. Thompson, the claimant, to do certain work on the land, and furnished him the explosives and most of the tools required. Mr. Thompson kept a team of horses and worked sometimes with his team and at other times

not. For five or six years preceding the date of the injury for which he seeks compensation, he had frequently done odd jobs for Mr. Twiss, at times as often as two or three times a week. On the Westville work Mr. Twiss gave him the privilege of getting such help as he needed, or taking those the brother of Mr. Twiss would furnish. Mr. Thompson in fact hired the men he used on the work. At the end of the week he gave Mr. Twiss the amount of the pay-roll, and Mr. Twiss gave him the amount of the wages, which he turned over to the men. Part of the time Mr. Thompson used his team on the work and part not; he was paid by the day at irregular times, being paid more when his team was used. He received nothing in addition to this from this work and no profit on the men's daily wages. On one occasion Mr. Twiss' brother put a man on this job whom Mr. Twiss paid directly. A few weeks after the Westville job was finished Mr. Twiss and Mr. Thompson arranged for the development of land of Mr. Twiss at Morris Cove, upon the understanding that the work was to be done under the same conditions and paid for in the same manner as upon the Westville job. This understanding was carried out. The time of completion of the work was indefinite, for the reason that Mr. Twiss kept adding to the work from time to time. Mr. Thompson employed a Mr. Douglass on a part of this work, and he was paid directly by Mr. Twiss, while the man assisting Douglass was paid by Mr. Thompson in the same manner as the other men.

The method of payment adopted by these parties, by the day rather than by the contract, is characteristic of the relation of an employee to an employer and not of an independent contractor with his contractee. So, too, it was characteristic of such an employment that the work to be done was not definite, that the price was not a fixed sum, and that it did not include a profit upon

the work or upon the wages of the men. The arrangement made did not indicate that Mr. Thompson was responsible to Mr. Twiss for the manner in which the work was done. These are significant circumstances, but not controlling. The factor which is controlling was the direction which Mr. Twiss retained over this work, his control over the men, the changes in it, and the additions to it which he made. The fact that Mr. Twiss, in the Morris Cove job, paid one man directly, and placed a man on the Westville job and paid him himself, and on both jobs the plaintiff was at liberty to procure the men he required through Mr. Twiss' brother, are among the facts which show that Mr. Thompson was subject to Mr. Twiss both in his control of the work and the men, and that either party was at liberty to withdraw from the arrangement without liability for breach of contract. They point to the relation as that of employer and employee and not that of independent contractor.

The last question for decision is whether the plaintiff is, under our Act, a casual employee.

As we examine Compensation Acts, we must remember that they differ in their treatment of what is casual employment. Some exclude from its benefits all casual employees; others follow the British Act and exclude all whose employment is of a casual nature and not for the purposes of the trade or business. The Massachusetts, Michigan, Wisconsin and Ohio Acts belong to the first class, while the Minnesota, Rhode Island, California and Connecticut Acts follow the British Act. The Massachusetts Act (Acts and Resolves of 1913, Chap. 568, § 1) provides that "'employee' shall include every person . . . except one whose employment is but casual, or is not in the usual course of the trade, business, profession or occupation of his employer."

The Connecticut Act, in Part B, § 43, as amended by the Public Acts of 1915, chapter 288, § 22, provides that the employee shall not be construed to include "one whose employment is of a casual nature, and who is employed otherwise than for the purposes of the employer's trade or business." Under the Compensation Act of 1913, and prior to this amendment, all casual employees were excluded from the remedy giving compensation for injury created by Part B of the Act. The amendment of 1915 changed this, and thereafter the one whose employment was casual and not in the trade or business of his employer could not recover the compensation provided by Part B, while the one whose employment was casual and in the trade or business of his employer could. The amendment of 1915 left Part A of the Act as it was. Section 2 of Part A provided that the provisions of § 1 should not apply to casual employees; and § 1 provided for the removal of the common-law defenses in an action to recover damages for personal injury. It follows that in an action by the casual employee to recover damages for personal injury, the common-law defenses are open to the employer.

In *Gaynor's Case,* 217 Mass. 86, 88, 104 N. E. 339, the court, in comparing its Act with the British Act, says: "No one whose employment is 'casual' can recover here, while there one whose employment is 'of a casual nature' comes within the Act provided it is also for the purpose of the employer's trade or business." Similar ruling was made in *State ex rel. Northfield* v. *District Court,* 131 Minn. 352, 155 N. W. 103; *Hill* v. *Begg,* L. R. (1908) 2 K. B. Div. 802, 805, 1 B. W. C. C. 320; *Knight* v. *Bucknill,* 6 B. W. C. C. 160. In ascertaining the meaning of the term casual, the determinative point under Acts patterned after the Massachusetts Act is the contract of service, while under those patterned after

the British Act the determinative point is the nature of the service rendered. *Gaynor's Case,* 217 Mass. 86, 104 N. E. 339; *Hill* v. *Begg,* L. R. (1908) 2 K. B. Div. 802, 805. The English authorities early concluded that a hard and fast 'definition of the term casual as used in the Compensation Act was inadvisable, and time has confirmed the wisdom of this conclusion.

As used in our Act, the casual employment means the occasional or incidental employment, the employment which comes without regularity. It is in this sense the word is used in our Act, rather than in the sense of an employment arising through accident or chance, which the Supreme Court of New Jersey has held to be the true meaning of casual in their Act. *Sabella* v. *Brazileiro,* 86 N. J. L. 505, 91 Atl. 1032. If the employment be upon an employer's business for a definite time, as for a week, or a month, or longer, it is not a casual employment, whether we regard the contract of service or the nature of the service. So, too, if the employment be for a part of one's time at regularly recurring periods of time, it is not a casual employment, whether we regard the contract of service or the nature of the service. *Dewhurst* v. *Mather,* L. R. (1908) 2 K. B. Div. 754, 1 B. W. C. C. 328. When the employment continues for a considerable time and promises to continue a considerably longer period, the importance of whether the test is the contract of service or its nature may be large.

We need not consider whether, under the Massachusetts Act, the test of the tenure of the employment, whether regular or not, would be met by the facts of this case. We are concerned in determining whether the nature of the employment was an occasional or incidental one, a regular one not measured by tenure of service but by the character of the work. The employment of the plaintiff was in the business of Mr.

Twiss, and the completion of the work would require at least a number of weeks. If the plaintiff satisfied Mr. Twiss, he would remain to the end. If he chose, he could quit the work at any time. Applying our test to such an employment, we think the common judgment would agree that it was a stable and not an incidental employment, and hence not casual in nature within the meaning of our Act.

But the employee who is barred by our Act as amended is not merely one whose employment is of a casual nature, but, in addition, one whose employment is not in his employer's trade or business. The development of this land was one of the businesses of Mr. Twiss, not evidently his main business, and yet a very substantial one. The plaintiff was injured in the pursuit of Mr. Twiss' business, and his employment was not of a casual nature within the meaning of our Act.

There is no error.

In this opinion the other judges concurred.