JOSEPH D. LASSEN *vs.* THE STAMFORD TRANSIT COMPANY.

Third Judicial District, New Haven, January Term, 1925.
WHEELER, C. J., BEACH, CURTIS, KEELER and HAINES, Js.

One who contracts to do a certain piece of work according to his own methods and without subjection to the control of his employer except as to the results of his work is, while so engaged, an independent contractor. If, on the other hand, he is subject to the lawful orders and control of his employer in the means and methods used in the employment, he is a servant or agent.

In applying this distinction, the method by which the compensation of the workman is determined is not of controlling importance, nor is the fact that he furnishes and maintains the tools or other instrumentality with which the work is performed.

The defendant held the exclusive concession for the operation of taxicabs at the Stamford railroad station, where it maintained an office for the conduct of its business, which was advertised in the newspapers as the furnishing of motor passenger service, without any intimation that the automobiles so used were not its own property. In fact, the taxicabs which it provided for its patrons were not owned or maintained by it, but by the individual drivers whom it engaged under an arrangement whereby the defendant solicited all business, established all rates and, through its despatcher, designated a cab for the carriage of each passenger. These drivers collected all cash fares and turned them over in full to the defendant which, at regular intervals, paid back to each one, as compensation for his services, an amount representing seventy-five per cent of the business handled by him, including business done on credit, such items being carried on the defendant's books and collected by it. The defendant at all times assumed and exercised the privilege of hiring and discharging the drivers at will. The present action was the outcome of a collision between the plaintiff's car and a taxicab negligently operated by one of defendant's

drivers. *Held* that the defendant was liable, since the driver was not an independent contractor, but a servant over whose means and methods of work the defendant obviously exercised control in order to insure the performance of its implied obligations to furnish each passenger with reasonably safe and expeditious transportation.

Argued January 22d—decided February 23d, 1925.

ACTION to recover damages for injuries to the plaintiff's property alleged to have been caused by the negligent operation of the defendant's automobile, brought to the Superior Court in Fairfield County and tried to the jury before *Avery, J.;* verdict and judgment for the plaintiff for $850, and appeal by the defendant. *No error.*

*Raymond E. Hackett,* for the appellant (defendant).

*Matthew H. Kenealy,* for the appellee (plaintiff).

HAINES, J.   The plaintiff claims that on November 10th, 1923, his duly registered automobile was being driven by his agent toward the railroad station at Stamford; that upon nearing the station and while upon his right-hand side of the traveled way and going in a westerly direction, he met an automobile driven by an agent of the defendant and going easterly; that when the machines had approached within ten feet of each other, the defendant's agent lost control of the car he was driving, swerved to the left and struck the plaintiff's car, causing a considerable damage to it. The plaintiff seeks to recover the cost of making the repairs made necessary by this injury, the loss of the use of his machine, its loss in value, and the loss of earnings of the machine for a period while repairs were being made. It is claimed that the collision was caused solely by the negligence of the defendant's agent, and

that such agent was then upon the defendant's business, and acting within the scope of his employment. Upon appeal to this court, counsel filed a stipulation which has restricted the matters to be considered, to the controlling question which we are asked to pass upon, viz., whether the driver of the defendant's car was the employee or agent of the defendant at the time of the collision and acting within the scope of his employment and upon the employer's business, rendering the employer responsible for his admitted negligence.

The plaintiff called to the stand the president and manager of the defendant company, who testified that the company was incorporated and had an exclusive concession from the railroad company for handling the taxicab business at this station, and had maintained an office there for that purpose for several years before the occasion in question. He further stated that the company advertised its business in the newspapers; that it called attention in these advertisements to the fact that there were twenty odd cars at the station, and these were shown in a picture, accompanied with a statement of the service rendered by the company, which included all kinds of automobile service, and that in none of these advertisements had there ever appeared a statement that these cars did not belong to the company. It also appeared from the statements of the same witness, that his company operated twenty-seven cars in the conduct of the business, the cars standing in the name and being owned by the individual drivers, and that the company itself owned three hearses. It was also explained by this witness, that when a driver did not have money to buy a car, the company sometimes loaned him the necessary amount; that the company solicited all the business, and designated the driver who was to take a pas-

senger in his car, but did not direct the driver as to how the passenger was to be conducted to his destination. He further stated that the cash fares were paid by the passenger to the driver, who turned the full amount in at the office of the company at the station, and if a charge was made for a fare in lieu of cash, this was reported to the office by the driver and was entered by the company on its books, and the responsibility for its collection from the passenger, rested with the company and not with the driver. For the services thus rendered by the drivers with their machines, they received from the company, four times each month, a sum representing seventy-five per cent of the business which the driver had done for such cash or credit. The title, maintenance and handling of the taxicabs remained with the drivers themselves. The company exercised the right to "hire and fire" these drivers.

It was further stated by this witness, that on the night in question, Santors was in the "employ" of the company as a driver for the defendant company and "working" for them, and that under that arrangement he had a passenger with him who had been procured by the company. The effect of the stipulation referred to, is to rest the case upon the testimony appearing in the record.

The driver was obviously either the employee and agent of the company, or he was an independent contractor. If the former relation existed, then the defendant is responsible to the plaintiff in this case, otherwise not.

We have heretofore had occasion to state the legal incidents of each relation, and these principles are well established. " 'An independent contractor is one who, exercising an independent employment, contracts to do a piece of work according to his own methods and without being subject to the control of his employer,

except as to the result of his work.'" *Alexander* v. *Sherman's Sons Co.*, 86 Conn. 292, 297, 85 Atl. 514. "The decisive test is who has the right to direct what shall be done . . . and how it shall be done? Who has . . . the general control?" *Thompson* v. *Twiss*, 90 Conn. 444, 447, 97 Atl. 328. "One is an employee of another when he renders service for him and what he agrees to do, or is directed to do, is subject to the will of that other in the mode and manner in which the service is to be done and in the means to be employed in its accomplishment as well as in the result to be attained. If one carries on work for another, and in mode, manner and means is independent of that other's control, he is an independent contractor." *Kinsman* v. *Hartford Courant Co.*, 94 Conn. 156, 159, 108 Atl. 562. "The independent contractor contracts to produce a given result by methods under his own control. The employee contracts to produce a given result, subject to the lawful orders and control of the employer in the means and methods used in the employment. He is bound in some degree to the duty of service to the employer." *Aisenberg* v. *Adams Co., Inc.*, 95 Conn. 419, 421, 111 Atl. 591.

The solution of the question now before us turns upon the proper application of these principles of law to the conceded facts. Though not specifically stated in the testimony appearing in the record, there are certain implications of fact which are inevitable. The object of maintaining an office at the railroad station and of advertising in the newspapers, was to obtain the patronage of railroad passengers and others who desired transportation from the railroad station or elsewhere to their destination. This transportation was to be effected by automobiles, and the advertisements of the company and the pictures showing the automobiles, implied that any other method of transporta-

tion was not within the contemplation of the company. It was also implied that the means adopted were to be safe and reasonably expeditious, and at reasonable rates of fare. All these things the company undertook to furnish to the passengers, and it must be implied that the company directed and required its drivers to conform to these methods of dealing with the company's customers. It is clear that no contractual relation existed between the driver of the taxicab and the passenger, and the sum which the passenger owed for the service given him by the driver, was owed to the company and not to the driver.

Turning now to the methods by which the company undertook to carry out its contract with the passengers, we find that, in the language of the president of the company, it employed Santors and the other drivers to take the passenger to his destination, and so far as appears, the company had no other means of performing this service. Adopting the president's language still further, the company "hired and fired" these drivers. In other words, they were men whom the company employed for this purpose, and whom the company could, at its option, discharge from the employment. The men so employed were paid according to the amount of work assigned to them by the company and the sum which they were thus able to bring in as the gross returns for this service in performance of this part of the company's contract with the passenger.

The specific work which the driver was bound to perform under this arrangement, and when it was to be performed, was determined, not by the driver, but by the company's despatcher, who indicated, under the system adopted by the company, which driver was to undertake the transportation of a particular passenger. It is a reasonable inference, to be drawn from the gen-

eral situation disclosed by the testimony, that if this direction of the despatcher were disobeyed, or the service refused, either at the time or by the means the company desired, the company would be in a position to exercise its right of discharging the driver. The same result would doubtless have followed if the driver had performed his duties at some time or in a way or by means which the company did not approve; for example, if the company had contracted with a passenger for transportation at nine o'clock, and the driver refused to carry him till ten o'clock; or if, instead of a taxicab, the driver offered transportation by saddle horse or buggy, or if the driver had insisted upon charging the passenger a price other than that fixed by the company, or had failed to make proper return of fares collected. This right of discharge was obviously necessary to the successful conduct of the business which the company was obligating itself to conduct, and points strongly to the relation of employer and employed. Moreover, the method of determining the driver's compensation for the services he rendered, whether by fixed wages, or commissions, and whether computed by the day or the job, is not of controlling importance; nor is the fact that the driver used his own automobile, maintained by himself, in performing his work. *Aisenberg* v. *Adams Co., Inc.,* 95 Conn. 419, 423, 111 Atl. 591.

We think it clear that the general control of the work being done by Santors, at the time of the collision, was with the company.

The facts in the case before us differentiate it from that of *Peer* v. *Babcock,* 230 N. Y. 106, 129 N. E. 224, cited by the appellant (defendant). In that case, the men who delivered coal for the company were free to make deliveries at their own pleasure, were not subject to the direction of the company in respect to the

time they should work, nor the manner in which the work should be accomplished. They were at liberty to work for whomsoever they pleased and for such length of time as suited them. They came to the coalyard at such times as they were not otherwise employed and were disposed to work, and they only worked for such length of time as they desired. Likewise, it is possible, we think, to differentiate the cases of *Dressler* v. *McArdle*, 85 Misc. 444, 147 N. Y. Supp. 821; *Burns* v. *Michigan Paint Co.*, 152 Mich. 613, 116 N. W. 182, and *Charles* v. *Barrett*, 233 N. Y. 127, 135 N. E. 199—the conclusions reached by the courts in those cases differing, not in the recognized principles of law, but because of the differing facts to which the principles were applied.

For the reasons given, the action of the court in refusing to set aside the verdict for the plaintiff and grant a new trial, is sustained.

There is no error.

In this opinion the other judges concurred.