MICHAEL WELZ *vs.* MATTHEW MANZILLO.

Third Judicial District, New Haven, June Term, 1931.
MALTBIE, C. J., HAINES, HINMAN, BANKS AND AVERY, Js.

Argued June 8th—decided July 29th, 1931.

*James M. Lynch* and *James E. McKnight,* with whom, on the brief, was *J. Gregory Lynch,* for the appellant (defendant).

*Irving W. Pasternak* and *Michael V. Blansfield,* for the appellee (plaintiff).

HAINES, J. The plaintiff and the defendant owned adjoining tracts of land in Waterbury. The complaint alleges in substance that on May 31st, 1927, about seven-thirty in the afternoon, the defendant for the purpose of breaking up some stone and boulders on his land, and while the plaintiff was on his own lot about seventy feet distant, set off a heavy charge of dynamite which had been inserted into a boulder or rock on the defendant's land; that the force of the explosion was such that various pieces of rock, dirt and débris were hurled some distance, one piece of

rock striking the plaintiff on the back causing serious physical injury and resulting in much suffering and expense and loss of earnings. It is alleged that this blasting operation was done by the defendant in a negligent, careless and reckless manner and so rendered the defendant liable to the plaintiff for the injuries the latter suffered.

Following a general admission and denial the defendant's answer contains a special defense that the blasting operations were entirely under the control of Walter Martin as an independent contractor who was a competent blaster working under a permit as required by law, and that the defendant had no control or direction whatever over the operation, and further that the blasting of these rocks under the circumstances then and there existing, was not an inherently dangerous operation. In reply to all this the plaintiff entered a general denial. The case was tried to a jury and verdict was rendered and judgment entered for the plaintiff from which the defendant now appeals.

The situation of the parties, the setting off of the blast and the resulting injury to the plaintiff are not disputed. An important issue framed by the pleadings was whether the blasting was done by the defendant with Martin assisting as servant and agent or whether Martin assumed all the responsibility for the operation acting as an independent contractor. The jury reached the conclusion that Martin was not an independent contractor. Another issue was whether the operation under the circumstances was inherently dangerous to the life and property of others, the plaintiff affirming and the defendant denying this. The jury decided that it was, and that the operation was not properly done so as to avoid that danger. These conclusions were obtained from the jury by interrogatories.

The defendant filed a "Proposed Draft Finding," five paragraphs of which are printed in the record. The defendant's brief asserts that the plaintiff filed a counter draft-finding but nothing of the kind appears in the record before us. The record shows an unfortunate but still not uncommon misconception on the part of counsel, of the nature and purpose of a finding in a jury case. The defendant filed a long motion to correct the finding by striking out certain paragraphs and amending others, and annexed exceptions with exhibits of portions of the testimony, and the failure of the trial court to comply in some respects with these requests is the subject of numerous assignments of error. In each paragraph of the motion to correct reference is made to the plaintiff's or defendant's "claim of facts." A finding in a jury case is not a recital of determined facts, but simply a statement in narrative form that evidence was offered to prove certain facts and that the party claims they were so proved. Its purpose is simply to enable the appellant to fairly present to this court errors in the charge or rulings of the court, which are ordinarily the errors claimed in a jury case, and this case is no exception. We are not concerned, as counsel apparently are, in obtaining absolute exactness in the detailed claims of proof. If the finding fairly presents to us the claimed errors of law, it will not be corrected. As we have indicated, the questions the appellant seeks to present on this appeal are essentially four: (1) Whether Martin was an independent contractor or the servant and agent of the defendant, (2) whether the blasting operation was inherently dangerous to the life and property of other persons, (3) whether certain evidence was properly admitted, and (4) as to the measure of damages. All these are fairly presented by the finding as it stands, and the assignments of error relating to

the finding will not be further considered here. *State v. Gargano*, 99 Conn. 103, 106, 121 Atl. 657; *Brown v. Goodwin*, 110 Conn. 217, 218, 147 Atl. 673.

The jury were charged that the measure of damages in personal injury cases included compensation for pain and suffering, physical and mental, expense of medical and surgical treatment, medicine and nursing, time lost, and if the injury had lasting effects, permanent diminution of earning capacity; that mental suffering, if a natural and proximate result of the physical injury was a proper element, as well as the danger if any from putting his life in jeopardy, since that would cause mental suffering. A fault in this assignment common to all the others relating to the charge is the failure of counsel to point out wherein the charge complained of is erroneous. While the criticism of this by opposing counsel is thus well taken, and the rule should be observed, we do not feel that we should refuse as we might do, to consider these portions of the charge under the circumstances. It does appear in the appellant's brief, that the objection made to this part of the charge is the reference to jeopardy as the cause of mental suffering, and it is argued that if the plaintiff was subjected to mental suffering, it was not from jeopardy since he could not have known that his life was in jeopardy until he was hit, and any mental suffering must have been due to the physical injury rather than to jeopardy. This is a wrong construction of the words of the court. The language used refers rather to the jeopardy caused by the physical injury, than to the previous apprehension of harm. The rule of damages given was essentially correct.

In dealing with the subject of independent contractor, the court first told the jury "the general rule is that the contractee . . . is not liable for injuries

caused by an independent contractor." In explaining the meaning of this term, the court further said that "an independent contractor is one who exercises an independent employment, contracts to do a piece of work according to his own methods and without being subjected to the control of his employer, except as to the result of his work." This is an accepted general definition which has been repeatedly recognized as correct in the decisions of this court. *Lassen* v. *Stamford Transit Co.*, 102 Conn. 76, 79, 80, 128 Atl. 117; *Alexander* v. *Sherman's Sons Co.*, 86 Conn. 292, 297, 85 Atl. 514; *Kinsman* v. *Hartford Courant Co.*, 94 Conn. 156, 159, 108 Atl. 562. The court then added that "if the defendant [employer] has control of the method of doing the work by instructing the person doing the same where to work, how to perform the work, or exercises any control over him, then he was not an independent contractor but his servant and agent." And again: "If you find that the defendant did have control, either in whole or in part, of the work that was being done, and actually interfered or helped in the work, then Martin was not an independent contractor, but was a servant or agent of the defendant."

In this additional statement the definition of independent contractor was too sharply limited. The employer may instruct an independent contractor "where to work," and it is not required that the employer must be unable to "exercise any control" whatever. Nor is it so that participation in the actual control of the work in part, or actual interference or help extended by the employer, will necessarily create the relation of master and servant. The contractee may exercise some control and take some part in the work without making the contractor his servant and agent. This is a commonly recognized principle governing

the relation of independent contractor. Where a truck driver was employed to use his own truck to transport material belonging to the employer, and he was directed by the employer's foreman what material to carry and where to carry it, and where the foreman had authority to terminate the services of the truck driver if not satisfactory, the relation of independent contractor was nevertheless held to exist. *Tortorici* v. *Moosop, Inc.*, 107 Conn. 143, 147, 139 Atl. 642. Where one was engaged under contract in building a sewer and certain detailed specifications and other provisions in the contract indicated a high degree of power on the part of the employer, over the work to be done, in the supervision of the work and in insuring its performance, it was still held that the relation of independent contractor existed. *Norwalk Gaslight Co.* v. *Norwalk,* 63 Conn. 495, 524, 525, 28 Atl. 32. It is not the actual partial control or interference, or the actual assistance rendered by the employer in doing the work or the right and authority to do so, but the right of general authority and control over the work which marks the distinction between the relation of independent contractor and that of master and servant.

The independent contractor must have the right of general control of the work, and that general control is not necessarily inconsistent with a right of limited control or interference by the employer in some minor detail; or with some assistance which the employer may have the right to render in the work of the independent contractor. In other words, to determine whether one is an independent contractor or an employee, the test is, has the employer the general authority to direct what shall be done and when and how it shall be done—the right of general control of the work. *Morganelli* v. *Derby*, 105 Conn. 545, 551, 135

Atl. 911; *Lassen* v. *Stamford Transit Co.*, 102 Conn. 76, 79, 80, 128 Atl. 117; *Aisenberg* v. *Adams Co., Inc.*, 95 Conn. 419, 421, 111 Atl. 591; *Thompson* v. *Twiss*, 90 Conn. 444, 447, 97 Atl. 328. The conceded participation of the present defendant in the work of blasting, naturally and almost inevitably, under the charge as given, led the jury to the conclusion that Martin was the servant and agent of the defendant and not an independent contractor, and this the jury did find specifically. Instead of a virtual direction to so find, the jury should have been instructed to determine from all the evidence in the case, whether the defendant did or did not have the right and authority to control the work. This part of the charge must be held to be reversible error.

Error is also assigned in that portion of the charge wherein the court dealt with the blasting as an inherently dangerous operation. The jury were told that "the work of blasting with dynamite or explosives of any kind is intrinsically dangerous," and if the execution of this work "called for the use of such an intrinsically dangerous agency as would obviously have exposed the plaintiff to probable injury therefrom, that said work to be done is such as is pronouncedly dangerous to life or health in and of itself, and by reason of the intrinsically dangerous nature of the instrumentality used in blasting and the fact by reason of the work being done it was dangerous in itself to life and health, then all the parties engaged in or contracting to do it are responsible for any injury resulting therefrom"; that when one employs a contractor to do such work "which in itself ordinarily calls for the use of such means and agencies as will obviously expose the person or property of others to probable injury . . . the person hiring the work done is liable. . . . I would add, gentlemen, that a dyna-

miter is in an extraordinary and superhazardous business. Of its very nature it is inherently dangerous and inimical to the life and property of all persons in the neighborhood of where its force is to be spent. The words due care or proper care in such cases mean extraordinary and every humanly possible care. . . . Such care means that the owner or employer is practically an insurer against the inherently destructive qualities of this agency. The question of independent contractor, in view of the extraordinarily dangerous nature of dynamite and the extraordinary amount of care or of vigilance to be exercised, should receive small consideration at your hands if the evidence is doubtful. . . . If a person uses dynamite or hires another person therefor, he does so at his peril and is responsible for the consequences thereof, because this alone can secure the public safety."

The court was here dealing with the legal obligation of this defendant, assuming that the work was being done by an independent contractor and that dynamite was intrinsically dangerous to others. Of the many statements of the rule, to be found in the textbooks and adjudicated cases, perhaps none is clearer than that in a case in our own State in an opinion by JUSTICE FENN, who said that the operation of blasting with dynamite was intrinsically dangerous and should be so regarded, yet, whether under all the facts in the case, the work contracted to be done, in the natural, ordinary and reasonable performance thereof, called for the use of such intrinsically dangerous agency and means as would obviously expose others to danger and injury, was a question for the jury. "If so, the defendant could not excuse itself from liability for injury so occasioned, by reason of any contract with another to perform the work. It is as sound a rule of law as of morals, that when, in the natural

course of things, injurious consequences will arise to another from an act which I cause to be done, unless means are adopted by which such consequences may be prevented, I am bound, so far as it lies within my power, to see to the doing of that which is necessary to prevent the mischief. Failure to do so would be culpable negligence on my part." *Norwalk Gaslight Co.* v. *Norwalk,* 63 Conn. 495, 527, 528, 28 Atl. 32. It is an established rule that " 'a person who uses an intrinsically dangerous means to accomplish a lawful end, in such a way as will necessarily or obviously expose the person of another to probable injury, is liable if such injury results, even though he uses all proper care.' " In such cases the negligence of the defendant need not be proved, and in general, contributory negligence is no defense; but recovery in such cases could only be defeated by proof of "wanton, wilful or reckless misconduct [on the part of the plaintiff], which materially increased the probability of injury and contributed thereto." *Worth* v. *Dunn,* 98 Conn. 51, 59, 62, 118 Atl. 467.

From the remainder of the charge given by the court however, the jury could not well have understood otherwise than that the use of dynamite in this particular operation in itself necessarily and obviously exposed the plaintiff to injury. The defendant contested the claim that the use of dynamite under the circumstances disclosed, was obviously dangerous to others, and submitted evidence in support of that contention. The use of even so dangerous an agency as dynamite, may under certain conditions, be entirely consistent with the safety of others. The circumstances surrounding its use raise a question of fact for the jury as to whether it obviously exposed others to danger. *Norwalk Gaslight Co.* v. *Norwalk,* 63 Conn. 495, 528, 28 Atl. 32. If the jury determined that the ordinary

and reasonable use of dynamite for this work necessarily and obviously exposed the plaintiff to probable injury, then the defendant, who, as well as Martin, participated in the act, even though the latter were an independent contractor, would be liable. This is based upon the principle that the employer has caused something to be done which he knows or ought to know, will probably subject another to injury, and not on the theory of negligent performance of the work by an independent contractor. *Alexander* v. *Sherman's Sons Co.*, 86 Conn. 292, 299, 300, 85 Atl. 514. This question should have been left to the jury for determination and without doing so it was error to instruct them that the fact that dynamite was used subjected all participants to liability.

We do not deem it necessary to discuss other reasons of appeal.

There is error and a new trial is ordered.

In this opinion the other judges concurred.