JOSEPHINE FRANCIS ET AL. *vs.* FRANKLIN CAFETERIA, INC., ET AL.

MALTBIE, C. J., HINMAN, AVERY, BROWN and JENNINGS, Js.

Argued October 13th—decided November 3d, 1937.

*Frederick J. Rundbaken* and *Moses Hartzmark*, for the appellants (plaintiffs).

*Edward S. Pomeranz*, with whom, on the brief, was *George Miske*, for the appellees (defendants).

BROWN, J.   The question determinative of this appeal is whether the plaintiff's decedent, Julius R. Francis, was at his death an employee or an independent contractor.   It is undisputed that the named plaintiff is his dependent widow within the Compensation Act, and that he was burned to death on November 20th, 1936, while working on the defendant's premises cleaning a ventilating shaft.   The finding as amended by the slight corrections to which, only, the plaintiff is entitled, contains these further material facts: The defendant has long conducted a restaurant in Hartford. As part of its ventilating system a shaft three feet in diameter leads from above the kitchen ovens to the outer air.   To keep this functioning properly it is necessary at regular intervals to clean out the refuse which accumulates upon the sides thereof.   This is an essential part in maintaining the defendant's business.

The decedent for years engaged in ordinary work

taking odd jobs wherever he could find them. He sought work pointing and cleaning chimneys, and as a further activity cleaned out ventilating shafts in restaurants. He had no regular place of business, telephone, bill-heads, cards, or other outward indication that he was engaged in any regular business, except as inferable from his efforts in going from place to place seeking to do specific jobs. On at least one previous occasion he had done the job of cleaning this shaft of the defendant. Shortly before his death he had performed this kind of work for the Lobster Grill and for the Sea Food Restaurant in Hartford. For the latter the owner paid him a price fixed by contract. On November 20th, 1936, the decedent entered the defendant's premises and solicited the job of cleaning out the shaft at the agreed price of $25. Upon suggestion from the defendant's manager that the price was high, the decedent responded that he would have to employ two helpers and buy necessary supplies of gasoline and powder. Thereupon the defendant, through its manager, gave the job to the decedent without further instruction, except that the work be properly done. The job was a simple one requiring no special skill or tools. On several previous occasions it had been done by the defendant's regular employees. To avoid interfering with defendant's business, it was agreed that the decedent should do the work after business hours on the night of November 20th, and finish the job before business commenced the next morning. He was instructed that if this proved impossible, he would be told when to return to complete it. The decedent secured Valentine Nelligan only to help him on the job, agreeing to pay him something for spending money. Nelligan had helped him on similar jobs before in a like capacity. The decedent purchased gasoline, and used for containers abandoned cans found

in the restaurant. His tools consisted of a putty knife which he purchased for ten cents and a scrubbing brush for twenty cents. He purchased powder also to be used in the performance of the work. The decedent used a ladder which was in the restaurant, furnished by the defendant, to climb up into the shaft which is some distance above the floor. He also used rags found in the restaurant, given him by an employee of the defendant.

The decedent and Nelligan arrived at the job twenty minutes before they actually began work, the defendant's manager instructing them to wait until the kitchen help left, which they did. The manager gave the decedent a key of the premises and told him when the work was done to hang it at a designated place that the regular employees might use it to open for business in the morning. To provide light in the shaft while at work, the decedent used an electric light attached to a switch owned by the defendant. He began work about 8.30 p.m. and continued until about 10 p.m., when apparently he in some way broke the bulb of the electric light causing the gasoline fumes to ignite, enveloping him in flames, and burning him so severely that death resulted a few hours later.

The commissioner further found that the defendant exercised no control over the decedent in the performance of his work; did not direct his movements in any manner; did not control the method to be adopted by him, except as to the result, and that all the elements existed constituting him an independent contractor. He therefore concluded that the decedent was not an employee within the contemplation of the Compensation Act, as claimed by the plaintiff, but was an independent contractor.

"An independent contractor is one who, exercising an independent employment, contracts to do a piece

of work according to his own methods and without being subject to the control of his employer, except as to the result of his work." 2 Cooley, Torts (3d Ed.) 1098. Since approving this definition in *Alexander* v. *Sherman's Sons Co.*, 86 Conn. 292, 297, 85 Atl. 514, we have amplified it in applying the principle in other cases: "When the doing of a specific piece of work is entrusted to one who exercises an independent employment and selects his own help and has the immediate control of them, and the right to control the method of conducting such work, the contractor is an independent contractor. . . . The decisive test is who has the right to direct what shall be done and when and how it shall be done? Who has the right of general control?" *Thompson* v. *Twiss*, 90 Conn. 444, 447, 97 Atl. 328. "Whatever the other conditions of a contract may be, if, in its essential features, it provides that the employer retain no control over the details of the work, but leaves to the other party the determination of the manner of doing it, without subjecting him to the control of the employer, the party undertaking to do the work is a contractor and not a mere employee." *Aisenberg* v. *Adams Co., Inc.*, 95 Conn. 419, 423, 111 Atl. 591. "The independent contractor contracts to produce a given result by methods under his control, while the employee contracts to produce a given result subject to the lawful orders and control of the employer in the means and methods used; these point in some degree to the duty of service to the employer." *Tortorici* v. *Moosop, Inc.*, 107 Conn. 143, 146, 139 Atl. 642.

The finding shows that the decedent was exercising the independent employment of cleaning restaurant ventilating shafts; that he contracted for the agreed price of $25 to clean the defendant's ventilating shaft according to his own method involving the use of gaso-

line, powder, putty knife and brush; that he selected his own helper, Nelligan, over whom he had immediate control; and that he was not subject to the control of the defendant with regard to the work except as to the result. It establishes, in short, that in so far as the job of cleaning this shaft was concerned the decedent and not the defendant, had the right to direct what was to be done, and how it was to be done, and so had the right of general control. The commissioner therefore was correct in concluding that the decedent was an independent contractor and not an employee. *Thompson* v. *Twiss*, supra.

In their brief, counsel for the plaintiff direct attention to a number of facts in the finding claimed to be conclusive that the decedent was an employee and not an independent contractor. Among such are these: the decedent had no place of business and no telephone, bill-heads, cards, or other indication that he was engaged therein; the decedent was working for the defendant on the defendant's premises at the time he was killed; he used a ladder and cans belonging to the defendant in the work; the defendant directed the time when the work was to be done; the work was simple and required no supervision; and it had been done before by the defendant's regular employees. That the decedent used the ladder and cans is not of controlling importance. *Bourget* v. *Overhead Door Co., Inc.*, 121 Conn. 127, 131, 183 Atl. 381; *Aisenberg* v. *Adams Co., Inc.*, supra, 423. Nor is the fact that the defendant, incidental to the important express provision of the contract that the work be done outside of its business hours, told the decedent to wait until the kitchen help were through before he began, where to hang the key when through, and that if impossible to finish that night he would be told when to resume. These directions did not constitute such supervision

or control as to render the relationship that of employer and employee. They related only to noninterference with the conduct of the defendant's business, one of the results contracted for, as distinguished from a method to be adopted in reaching the result. *Tortorici* v. *Moosop, Inc.,* supra, 147; *Massolini* v. *Driscoll,* 114 Conn. 546, 550, 159 Atl. 480. Such a right of limited control by the defendant was not necessarily inconsistent with the decedent's right of general control determinative that the relationship was that of independent contractor. *Welz* v. *Manzillo,* 113 Conn. 674, 680, 155 Atl. 841; *Tierney* v. *Correia,* 123 Conn. 146, 150, 193 Atl. 201. The suggestion that the work to be done was so simple as to require no supervision is unwarranted since the finding reveals that not only might the cleanliness of the kitchen be seriously impaired thereby, but the premises even exposed to danger of fire by the use of gasoline in accomplishing it, and further that a price was to be paid commensurate with the difficulties involved. The facts relied upon by the plaintiff, whether taken separately or together, are at the most but evidential. It was for the commissioner, considering these and all of the other relevant facts, to determine whether or not the defendant had the right of general control and whether or not the decedent was an employee. Since his conclusion upon the subordinate facts found that the decedent was an independent contractor and not an employee, was reasonable, logical, and in accord with the legal principles pertaining to the situation, it must stand. The court correctly so ruled in dismissing the appeal.

The plaintiff's further claim that even though the decedent was an independent contractor, since the work of cleaning the defendant's ventilating shaft was a part or process in the defendant's business, performed

on premises under its control, it is liable to the plaintiffs under the provision of § 5230 of the General Statutes. As we said in *Levecque* v. *Dupuis,* 119 Conn. 224, 229, 175 Atl. 782, this statute "relates to the liability of a principal to the employee of a contractor employed by the principal," and again, in *Bello* v. *Notkins,* 101 Conn. 34, 38, 124 Atl. 831, "the special purpose of § 5345 is to protect employees of minor contractors against the possible irresponsibility of their immediate employers, by making the principal employer who has general control of the business in hand liable as if he had directly employed all who work upon any part of the business which he has undertaken to carry on." It does not apply to the situation here where liability for compensation to the contractor, as distinguished from that to one of his employees, is involved. The wording of the statute does not warrant such a construction.

There is no error.

In this opinion the other judges concurred.