JULIUS PRIBULO ET ALS. *vs.* LOUIS CHIARELLI ET ALS.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued October 6th—decided December 15th, 1931.

*Cornelius J. Danaher,* for the appellant (plaintiff Pribulo).

*Charles A. Hallock,* for the appellees (defendants).

MALTBIE, C. J.   The plaintiff, a pedestrian, was injured by being struck by a board thrown by the defendant Louis Chiarelli from the roof of a building in course of reconstruction, and brought this action to recover for his injuries against Chiarelli, John Sacco and Domenic and Frances Gigliotti.   Frances Gigliotti owned the building and Domenic Gigliotti, her husband, acting as her agent, made a contract with Chiarelli Brothers for the construction of an additional third story.   Chiarelli Brothers sublet the carpentry work on the building to Louis Chiarelli and Sacco, and Louis Chiarelli was engaged upon this work when the board was thrown.   The trial court gave judgment for the plaintiff against Louis Chiarelli and Sacco but for the defendants Gigliotti on the ground that the contract with Chiarelli Brothers made them independent contractors for the work.   The claim made upon this appeal is that the Gigliottis were also liable because the agreement with Chiarelli Brothers did not make them independent contractors and Louis Chiarelli was the agent of the Gigliottis in the work he was doing when the board was thrown.   The only ground for questioning the correctness of the trial court's conclusion arises from the fact that the specifications annexed to the contract with Chiarelli Brothers contained a provision as follows:  "The work is all to be performed

in a most thorough manner, and with materials the best of their several kinds, ·as herein described, or necessary and under the superintendence of owner."

The specifications begin with two pages of general conditions in printed form, evidently prepared for general use, and the provision quoted is among them. It was not, however, printed in full, there being a blank where the word "owner" is inserted, in typewriting. Throughout the general conditions there are other similar blanks which have been filled in the same way. Thus the contractor is required to provide competent foremen to whom instructions can be given by the owner; if work is to be tested or approved, notice is to be given to the owner and if it is covered up before such test or approval the owner may require it to be uncovered for examination; the owner may grant extensions of time where the work is delayed, if claim is made to him therefor; and the contractor is to stake out the building as located and directed by the owner. In other respects certain duties are placed directly upon the owner in the printed form. On the other hand, the contractors are to furnish transportation, materials, apparatus, scaffolding and labor that may be necessary and to give their personal superintendence throughout the work; they are responsible for their materials upon the ground and street and must guard the public from danger; they are held solely responsible for the faithful execution of the work and for any damages growing out of a failure in this regard; they are also made responsible for any damage done to adjoining buildings or to persons or the property of the public according to state or city law or caused by any operations under the contract and for any violations of city ordinances and they agree to hold the owner harmless from any damages arising from negligence to workmen or other persons engaged

in or about the building or passing the same; and they are made responsible for any defect in the execution of the work. In the typewritten portions of the specifications annexed to the printed conditions is a provision that the contractors are to consult the owner during the progress of the work and to use care to give satisfaction throughout.

The leaving of the blanks in certain of the printed conditions where the word "owner" is inserted, particularly considered in conjunction with the printing of the word "owner" in other portions, suggests that these conditions were designed to meet a situation where superintendence was to be exercised, not by the owner, but by someone representing him, as an architect or engineer. Reading the specifications in their entirety there is no doubt that the superintendence to be exercised by the owner was not meant to give the Gigliottis authority to control the manner and means of accomplishing the work to be done, and this view of the contract is emphasized by the fact, found by the trial court, that they never did attempt to exercise control. The intention was to place them in a situation where they could assure themselves that the work was carried out in full accord with the specifications. As is said of a similar provision in *Vosbeck* v. *Kellogg,* 78 Minn. 176, 80 N. W. 957, "What the contract means is that the telephone company should have the right to supervise as to results—not merely as to the final result obtained when the work was completed, but also as to immediate results obtained from time to time as the work progressed. It was not intended by the contract to give the telephone company the right to dictate the means by which these intermediate results should be obtained." Chiarelli Brothers were therefore independent contractors and the trial court was correct in its construction of the con-

tract. *Welz* v. *Manzillo*, 113 Conn. 674, 680, 155 Atl. 841; *Uppington* v. *City of New York*, 165 N. Y. 222, 232, 59 N. E. 91; *Callan* v. *Bull*, 113 Cal. 593, 598, 45 Pac. 1017; *Good* v. *Johnson*, 38 Colo. 440, 444, 85 Pac. 439; 14 R. C. L. 69.

There is no error.

In this opinion the other judges concurred.