FREDERICK DARLING *v.* BURRONE BROTHERS, INC., ET AL.

HOUSE, C. J., COTTER, THIM, SHAPIRO and LOISELLE, Js.

Argued November 2, 1971—decided January 19, 1972

*Charles G. Albom,* with whom were *Robert J. Gillooly* and *John R. McGrail,* for the appellants (defendants).

*Nathan Goldberg* and *John E. McNerney,* for the appellee (plaintiff).

LOISELLE, J. The plaintiff, Frederick Darling, was injured when the ditch in which he was working caved in on him. He brought this action to recover

damages for his personal injuries. The jury returned a verdict for the plaintiff and from the judgment rendered thereon the defendants have appealed.

The plaintiff's claims of proof include the following: Anderson-Wilcox, Inc., a builder and land developer, by its president, John Wilcox, hired the defendant Burrone Brothers, Inc., as independent contractors, to excavate a ditch to accommodate a storm sewer. There were three steps in the procedure used in digging the ditch: The defendant Joseph Burrone, an employee of the defendant Burrone Brothers, Inc., would dig with a machine called a backhoe; the plaintiff and Charles Mansolf, a coworker, both employees of Anderson-Wilcox, Inc., would smooth the bottom of the ditch with a shovel, guide a section of sewer pipe into place and pack earth around it to keep it from moving laterally; a Burrone Brothers, Inc., employee, the defendant Stephen Kopylec, would then backfill the trench, i.e., push the excavated earth back into the ditch with a bulldozer. The plaintiff was required to be in the ditch throughout the operation. During the backfilling, he would use a shovel to deflect rocks from falling into the sewer pipe.

A one-inch water pipe, or lateral, crossed the path of the ditch, running perpendicular to it. Joseph Burrone told the plaintiff to backfill around the lateral. Having done so, the plaintiff remained in the ditch, standing on the sewer pipe, and watched the backhoe operation. While the plaintiff was in this position, the bulldozer and backhoe were operating and causing vibrations, as did a nearby railroad. The earth which Joseph Burrone dug contained bony gravel and was unstable. Joseph Burrone made no inspection to determine its character; nor did he slope, brace, or shore the walls of the ditch to

prevent their caving in, or warn the plaintiff to get out of the ditch. These conditions made the ditch an unsafe place in which to work and caused a section of the ditch wall, about fourteen feet in length and about five feet in width, to cave in on the plaintiff, burying him to his waist. John Wilcox, the plaintiff's employer, was at the job site occasionally, but only to see that the work conformed to specifications.

The defendants have assigned as error the refusal of the court to include in the plaintiff's claims of proof six paragraphs which they claim the plaintiff offered as evidence and claimed to have proved. A party to an action may not force into the claims of proof of his adversary factual matters on which the latter does not rely. *Franks* v. *Lockwood,* 146 Conn. 273, 276, 150 A.2d 215; *Castaldo* v. *D'Eramo,* 140 Conn. 88, 93, 98 A.2d 664. The defendants have also assigned error in the court's refusal to include several of their claims of proof in the finding. "Where a party seeks additions to his own claims of proof in a case tried to the jury, the additions should be made if they are material and are supported by the evidence." *Phoenix Mutual Life Ins. Co.* v. *Brenckman,* 148 Conn. 391, 394, 171 A.2d 194; *Castaldo* v. *D'Eramo,* supra. The finding is, accordingly, corrected by adding to it facts from the defendants' draft finding that are supported by the appendix to their brief.

The defendants' claims of proof include the following: Anderson-Wilcox, Inc., engaged Burrone Brothers, Inc., as a subcontractor to excavate a ditch for storm sewers, at an hourly rate for its machines and two of its men. Both the machines and the men were subject to the orders of John Wilcox, who had charge of the job, was continuously present at the jobsite, gave orders periodically and was the plain-

tiff's immediate supervisor. No Burrone Brothers, Inc., employee was authorized to give orders to the plaintiff or Mansolf, who were both under the orders only of John Wilcox. Wilcox directed Joseph Burrone where to dig and at what angle and marked the location of the lateral so that Joseph Burrone would not dig it out with his backhoe. John Wilcox deemed it his function to see to it that Joseph Burrone worked in a safe manner insofar as Anderson-Wilcox, Inc., employees were concerned. John Wilcox would also check the sewer pipe to see if it was laid at the proper angle. The plaintiff was not required to be in the ditch except to level the bottom, guide the pipe into place, and pack earth around it to prevent it from moving laterally. John Wilcox and Joseph Burrone had warned the plaintiff several times to stay out of the ditch. Usually, workmen would climb out of the ditch before it was backfilled. To keep the ditch from caving in, Joseph Burrone sloped its sides in such a way that it was three feet wide at the bottom and eight feet wide at the top. His inspection of the soil, in which he had already dug ninety feet, revealed it to be firm and stable.

Joseph Burrone had no responsibility for the work at the water lateral. Because the backhoe could not remove earth around the lateral without pulling out the lateral, excavating and backfilling around it had to be done by hand shovel by the plaintiff or Mansolf. Sloping near the lateral also had to be done in this fashion. The plaintiff backfilled the ditch by hand shovel in the area of the lateral. After backfilling the lateral, he stood in the ditch for more than ten minutes. While the plaintiff was standing there, two or three feet from the lateral, a slide-in occurred, at which time the backhoe was not in operation and the bulldozer was thirty to thirty-five feet away. The

slide-in came from the earth which the plaintiff had just backfilled around the lateral.

The defendants attack forty-four paragraphs in the plaintiff's offers of proof in the finding as being unsupported by the evidence. An examination of the appendices adequately supports forty-one paragraphs so attacked by the defendants. One paragraph attacked is of no significance and need not be considered. The finding is corrected as to the two remaining claims: The evidence printed in the appendices supports a finding that a "couple" of feet of gravel were removed above the lateral rather than a few feet and the finding is so corrected; the paragraph in the finding stating "[a]ccording to defendant Joseph Burrone, the accident occurred because of the operation of the bulldozer" is deleted.

The defendants assign as error the court's instruction that as a matter of law the defendants were in charge of the excavation of the ditch and thus in control, without putting the issue of control to the jury for their determination. Where the evidence is such that the minds of fair and reasonable persons could reach but one conclusion as to the identity of the person exercising control, the question is one for the court but, if honest and reasonable persons could fairly reach different conclusions on the question, then the issue should properly go to the jury for their determination. *Trainor* v. *Frank Mercede & Sons, Inc.,* 152 Conn. 364, 369, 207 A.2d 54; *Johnson* v. *Pulidy,* 116 Conn. 443, 445, 165 A. 355.

The defendants claim that Burrone Brothers, Inc., received compensation on an hourly basis for its two men and equipment; that John Wilcox told Joseph Burrone where to dig and how deep to dig; that Wilcox located the lateral; that the plaintiff and Mansolf were employees of Anderson-Wilcox, Inc.; that John

Wilcox told his employees to excavate and slope at the site of the lateral and also make the bottom of the ditch ready for the sewer pipe; that, therefore, control of the location was in Anderson-Wilcox, Inc., and not in the defendants.

The manner of remuneration, whether in wages, salary, commission, by piece or job, is not decisive or controlling in determining whether one is an employee or an independent contractor exercising control over the manner of his own work. *Bourgeois* v. *Cacciapuoti,* 138 Conn. 317, 321, 84 A.2d 122; *Caraher* v. *Sears, Roebuck & Co.,* 124 Conn. 409, 414, 200 A. 324; *Bourget* v. *Overhead Door Co.,* 121 Conn. 127, 131, 183 A. 381; *Aisenberg* v. *C. F. Adams Co.,* 95 Conn. 419, 423, 111 A. 591.

The fact that John Wilcox was present at the job site, indicated to Joseph Burrone where to dig the ditch and how deep to dig it, periodically checked to make sure the depth was accurate and marked the area establishing the location of the lateral by sticks imbedded in the ground signifies no more than the furnishing of specifications for the job. It does not demonstrate control of the manner and means of accomplishing the digging. It is apparent that John Wilcox did no more than exercise his right to supervise the general result and also the immediate results, from time to time, as the work progressed. *Pribulo* v. *Chiarelli,* 114 Conn. 32, 35, 157 A. 420; *Welz* v. *Manzillo,* 113 Conn. 674, 680, 155 A. 841; 41 Am. Jur. 2d, Independent Contractor, § 10. The information furnished was necessary to enable the defendant to dig the ditch to the proper depth, locate it properly and avert damage to the existing lateral. *Tortorici* v. *Sharp Moosop, Inc.,* 107 Conn. 143, 147, 139 A. 642. That the plaintiff and Mansolf were employees of Anderson-Wilcox, Inc., worked in the

ditch and assisted the defendant is not material. The claims of proof by both parties clearly show that the employees had no right to interfere with the means or manner of digging the ditch. Where an employee has no authority to interfere with the manner of operation, he has no effect on the determination of the one in control. *Battey* v. *Osborne,* 96 Conn. 633, 636, 115 A. 83. It is also undisputed that John Wilcox in no manner told Joseph Burrone how to dig the ditch or slope its sides. Anderson-Wilcox, Inc., did not and could not dig ditches. As was its practice, Anderson-Wilcox, Inc., let out excavation work to subcontractors. Here, it chose the defendant Burrone Brothers, Inc., with whom it had worked for years, because Burrone Brothers, Inc., had the requisite skill and experience.

The defendants admitted by their own offers of proof that Joseph Burrone exercised his own judgment as to the amount of slope which was needed for the adequate protection of persons and property in the ditch; that he decided how wide the ditch was to be at the top; that when he approached the area where a post indicated the location of a lateral he was the one who decided to excavate to the full depth of the trench up to six to nine inches from the south side of the lateral; that he was the one who decided to take two feet of earth from above the lateral; and that it was he who decided where to resume digging the full depth of the ditch on the other side of the lateral.

An analysis of the evidence shows that all the testimony as to actual physical events points directly to Burrone Brothers, Inc., having control. The only testimony pointing in a different direction is that of Joseph Burrone in which he claims that he was subject to the orders of John Wilcox and that he had no

authority to give orders to the plaintiff. The defendants also rely heavily on John Wilcox's affirmative answer to the question: "So that if the question were asked who was in charge of the building out there of the roads and the storm sewer operation, it would be you?" The statement or question immediately followed testimony by John Wilcox that his partner was primarily concerned with sales and that he, John Wilcox, was primarily concerned with building and developing.

In examining the claims of proof of both parties, and especially those of the defendants, it is apparent that the manner and means of excavating the ditch was in the control of Burrone Brothers, Inc. The status of the defendant Burrone Brothers, Inc., as a matter of law, therefore, was that of an independent contractor. In *Alexander* v. *R. A. Sherman's Sons Co.*, 86 Conn. 292, 297, 85 A. 514, we adopted the definition that "[a]n independent contractor is one who, exercising an independent employment, contracts to do a piece of work according to his own methods and without being subject to the control of his employer, except as to the result of his work." This definition has been amplified in subsequent cases but at no time has the basic principle been altered. See *Francis* v. *Franklin Cafeteria, Inc.*, 123 Conn. 320, 324, 195 A. 198. If the contract provides that the employer retains no control over the details of the work, but leaves to the other party the determination of the manner of doing it, without subjecting him to the control of the employer, the party undertaking the work is a contractor and not a mere employee. *Aisenberg* v. *C. F. Adams Co.*, 95 Conn. 419, 423, 111 A. 591. "The fundamental distinction between an employee and an independent contractor depends upon the existence or nonexistence of the

right to control the means and methods of work."
*Beaverdale Memorial Park, Inc.* v. *Danaher,* 127
Conn. 175, 179, 15 A.2d 17; see *Kaliszewski* v.
*Weathermaster Alsco Corporation,* 148 Conn. 624,
628, 173 A.2d 497; *Bourgeois* v. *Cacciapuoti,* 138
Conn. 317, 320–21, 84 A.2d 122; *Norwalk Gaslight
Co.* v. *Norwalk,* 63 Conn. 495, 524, 28 A. 32.

The general rule is that where the owner of prem-
ises employs an independent contractor to perform
work on them, the contractor, and not the owner, is
liable for any losses resulting from negligence in the
performance of the work. *Wright* v. *Coe & Ander-
son, Inc.,* 156 Conn. 145, 151, 239 A.2d 493; *Mann* v.
*Leake & Nelson Co.,* 132 Conn. 251, 254, 43 A.2d 461.
The basic premise is that the assumption and exer-
cise of control over the offending area is deemed to
be in the independent contractor. *Trainor* v. *Frank
Mercede & Sons, Inc.,* 152 Conn. 364, 368, 207 A.2d
54. By its charge relating to the defendants' respon-
sibilities to the plaintiff, the court, in effect, correctly
ruled that the defendant Burrone Brothers, Inc., was
an independent contractor with control of the job
site.

The defendants contend that a special situation
existed as to the water lateral, especially militating
against a finding of control by the defendant Burrone
Brothers, Inc., at this location. In support of this
claim, the defendants relied on testimony to the
effect that its machinery was too gross to allow ex-
cavating, sloping and backfilling around the lateral
and that, as a result, complete responsibility for the
area rested in the hand labor of the plaintiff, Man-
solf, and John Wilcox, their employer. The court
charged on the duty of the defendants to the plaintiff
while on the job site but stated the following: "Third:
he [Joseph Burrone acting for the defendant Bur-

rone Brothers, Inc.] has a duty to safeguard against any dangerous condition which, based on his actual knowledge or chargeable knowledge, he could reasonably anticipate. In this regard, the defendants claim that they had no responsibility to provide safeguards at the water lateral, that this responsibility rested on the plaintiff himself. If you so find, then, of course, you will find for the defendant." The instructions up to this point had been predicated on the duty of one in control, but when the quoted instruction was given it effectively made responsibility in the area of the water lateral a question of fact depending on which offers of proof were accepted. The defendants argue that that instruction forced the jury to an election which was disadvantageous to them. This disadvantage is premised on the claim that the trial court instructed the jury that the defendant Burrone Brothers, Inc., had control over the operation and that, therefore, the charge quoted above pitted the defendants' claim against the conclusion of the court. This claim is without merit. The charge correctly distinguished between the issue of control of the operation generally, on which it ruled as a matter of law, and of control of the work at the lateral, on which it left to the jury the determination of control. The defendants were placed at no disadvantage by the charge.

The defendants also attack the court's charge that a workman "is not required to be on the alert to discover" dangers. Specifically, the trial court charged: "The workman has a right to expect that the excavator will take reasonable care to ascertain the actual condition of the working area and having discovered it, either will make it reasonably safe or will give the workman adequate warning of the actual condition and of the risk involved therein. Therefore,

the workman is not required to be on the alert to discover defects or dangerous conditions." In this connection, it should be noted that the court went on to charge the jury that the plaintiff was required to exercise the care of an ordinarily prudent person and that: "He must have, in a reasonable degree, the alertness and the concentration necessary to enable him to use his senses to perceive his surroundings and to recognize and appreciate any danger involved in them."

The charge of the trial court closely followed the language of Restatement (Second), 2 Torts, p. 217, § 343, comment d and is a correct statement of the law. *Newell* v. *K. & D. Jewelry Co.*, 119 Conn. 332, 334, 176 A. 405. Generally speaking, one to whom the duty of due care is owing has a right to assume that it will be performed, in the absence of circumstances indicating the contrary, and may excuse himself "for an omission to take active measures, such as looking, listening, and making inspection, by proof that the defendant owed to him a duty of care, and that he relied upon the performance thereof." 57 Am. Jur. 2d 737, Negligence, § 334; see *Zoccali* v. *Carfi*, 128 Conn. 168, 171, 20 A.2d 728; *Smith* v. *S. S. Kresge Co.*, 116 Conn. 706, 707, 164 A. 206; *Florez* v. *Groom Development Co.*, 53 Cal. 2d 347, 358, 348 P.2d 200. The plaintiff in the case at bar was bound to exercise only that amount of care which an ordinarily prudent person would exercise. If such a person would have been aware of a dangerous condition, then, of course, the plaintiff would be chargeable with such awareness. He would not, however, have to be "alert to discover" defects. He could go about his business as an ordinarily prudent person would. In short, he had no threshold duty to inspect or to be particularly alert. Only if he were con-

fronted with an obviously dangerous situation would he be required to take special precautions. Prosser, Torts (3d Ed.), pp. 163, 174.

*Smith* v. *L. & S. Corporation,* 133 Conn. 105, 108, 48 A.2d 239, defines "alert" to be synonymous with "vigilant." In a more general sense, the term "alert" marks a "careful, zealous watchfulness"; Webster, Third New International Dictionary, and applies to one "keenly watchful" or "on the look out." Funk & Wagnalls, New Standard Dictionary. Certainly, a workman is not charged with such a posture when his situation would not appear threatening to an ordinarily prudent person. Whether his situation was one of obvious danger, creating for him additional duties to insure his own safety, was properly left for the jury to determine.

The defendants also attack forty-three paragraphs of the charge, an additional three narrative paragraphs on the ground of prejudice, the failure to charge as requested in seven paragraphs of their requests to charge and the court's failure to use two paragraphs of their draft finding as its narrative of the facts bearing on an evidentiary ruling. Aside from those issues which we have already discussed and which are determinative of a great number of these claims of error and those abandoned by the defendants, only two of these assignments require discussion. The defendants' claim that the court erred in failing correctly to charge on contributory negligence is without foundation. It is true that the court did not use the exact language requested by the defendants, but the charge adequately instructed the jury on this element of the case. *Mace* v. *Conde Nast Publications, Inc.,* 155 Conn. 680, 687, 237 A.2d 360; *Michaud* v. *Gagne,* 155 Conn. 406, 410, 232 A.2d 326. The remaining assignment of error

concerns the court's comment on its belief that some of the elements of the damages claimed were not contested. The court specifically stated immediately after the attacked statement: "Now, the fact that apparently . . . [the defendants] do not question them does not relieve you of the responsibility of making your own determination, although it might make your task easier. Of course, if your impression differs from mine about the defendants' position, then you will consider these questions as though they were hotly contested." In view of this statement, the defendants were not disadvantaged by the court's comment.

The defendants further claim that the verdict of $150,000 was excessive. The court denied a motion to set aside the verdict as being excessive, setting forth its reasons in a memorandum of decision. The ruling of a trial court on a motion to set aside a verdict is entitled to great weight. *Marin* v. *Silva,* 156 Conn. 321, 327 (dis.), 240 A.2d 909; *Vogel* v. *Sylvester,* 148 Conn. 666, 669, 174 A.2d 122. Although the trial court treated the time lapse between the accident and the trial as five years rather than 5.25 years, the court was sufficiently accurate for its purpose. We think the following excerpt from its memorandum of decision is particularly pertinent: "The plaintiff was a common laborer who, as a result of the cave-in, was left with a completely fused ankle joint and a 40% disability of his right leg. He was hospitalized on three occasions, some of which resulted in complications, viz., pulmonary infarction, pneumonitis and pain in his scrotum. Although the ankle fusion was supposed to eliminate pain and suffering in fact the plaintiff's leg continued to swell and to be painful if he stood on it for any length of time. For the five years from the date of the acci-

dent to the date of trial the plaintiff offered evidence of a loss of earning capacity of $20,000. The plaintiff's annual wage was approximately $4,900. If the annual rate were multiplied by the plaintiff's work expectancy of 18.8 years, the future loss is $92,000; if multiplied by the net loss rate accident to trial, the future loss is $75,000; even if the future loss were reduced to present worth, such loss would amount to $60,000. The medical specials approximate $5,000. Thus total specials range from $85,000 to $117,000. On this basis the general damages range from a high of $65,000 to a low of $33,000. When one considers that the life span factor is $31\frac{1}{2}$ years, neither figure is excessive for general damages." On the evidence presented, there was no error in the refusal of the court to set aside the verdict. The jury could reasonably have found that the amount awarded by them constituted fair, just and reasonable compensation for the plaintiff's injuries. *Prystash* v. *Best Medium Publishing Co.*, 157 Conn. 507, 509, 254 A.2d 872; *Verrillo* v. *Green*, 155 Conn. 694, 230 A.2d 20.

There is no error.

In this opinion the other judges concurred.