Floyd K. MENZIE, et al.

v.

**WINDHAM COMMUNITY MEMORIAL HOSPITAL, et al.**

**Civ. No. H–88–605 (PCD).**

United States District Court, D. Connecticut.

Sept. 16, 1991.

Joel H. Lichtenstein, Karen E. Koskoff, Christopher D. Bernard, Bridgeport, Conn., for Floyd K. and Lois J. Menzie, Estate of Chad B. Menzie.

Kevin R. Murphy, Murphy, Laccavole & Karpie, Bridgeport, Conn., for Kathy Lynn Menzie.

Cynthia A. Jaworski, Ann M. Bogorowski, Corcoran, Mallin & Aresco, PC, Hartford, Conn., for Peter J. Calise.

Francis H. Morrison, III, Paul D. Williams, Mary Ellen Whiteman, Day, Berry & Howard, Hartford, Conn., for Windham Community Memorial Hosp., Inc., and Hatch Hosp. Corp.

Louis B. Blumenfeld, John F. Scully, Lorinda S. Coon, Cooney, Scully and Dowling, Hartford, Conn., for Robert I. Moskowitz.

## RULING ON PENDING MOTIONS

DORSEY, District Judge.

Plaintiff[1] brings this action for damages against two doctors who he alleges were negligent in the treatment of injuries he sustained in a motorcycle accident, which negligence caused him to suffer permanent brain damage. In addition, plaintiff seeks to hold the hospital where he was treated vicariously liable for the doctors' alleged negligence on the theory of actual or apparent agency. Defendant hospital ("defendant" or "hospital") moves for summary judgment, claiming it cannot be held liable on either theory because the doctors were not employees or agents of the hospital, nor did the hospital take any action which could have led plaintiff to believe they were. Plaintiff opposes defendant's motion and cross-moves for summary judgment on the theory of apparent agency. In addition, plaintiff moves for summary judgment on its claim that the hospital is liable because the physicians were negligent in performing a non-delegable duty of the hospital.

*Facts*

In September 1986, plaintiff was riding his motorcycle when he lost control and crashed, thereby sustaining a deep wound in his right buttock and a fractured right femur. He was taken to Windham Community Memorial Hospital and admitted. Dr. Craig Sweeney, who is not a defendant here, examined plaintiff and arranged for the orthopedic surgeon who was "on-call" that evening, Dr. Robert Moskowitz, to come to the hospital to further examine plaintiff.[2] Moskowitz determined, after examining plaintiff and reviewing the x-rays, that plaintiff's life was in jeopardy, and that, therefore, surgery was immediately necessary. Moskowitz discussed surgery with plaintiff and thereafter, arranged for the "on-call" anesthesiologist, Dr. Peter Calise, to come to the hospital. Upon his arrival, Calise met with plaintiff, took his medical history, and explained anesthesia to him. Plaintiff then gave his "informed consent" to surgery. However, allegedly due to the negligence of Drs. Moskowitz and Calise, plaintiff's blood pressure dropped after Calise administered a spinal anesthetic but before surgery commenced, causing plaintiff to suffer cardiorespiratory arrest. As a result, plaintiff was left with no memory of any aspect of the accident and permanent brain damage.

Plaintiff seeks to hold the hospital liable, not for its own negligence, but rather, for the alleged negligence of the doctors who treated him at the hospital, on the theory of *respondeat superior*. First, plaintiff claims the doctors were "agents, servants or employees" of the hospital.[3] Plaintiff also claims, as an alternative basis for liability, that, even if the doctors were not actual agents or employees, the hospital should be held liable for the doctors' negligence on the theory of apparent agency. In addition, plaintiff moves for summary judgment on its claim that the hospital had a non-delegable duty to provide non-negligent medical care.

*Discussion*

A. *Summary Judgment Standard*

■ Summary judgment will be granted only if the court finds, drawing all inferenc-

---

**1.** Although several plaintiffs in addition to Chad Menzie, who was injured, are involved here, for the sake of simplicity, this ruling refers to only one "plaintiff."

**2.** State regulations require that hospitals must "provide adequate care for persons with acute emergencies at all hours." Conn.Agencies Regs. § 19–13–D3(j)(2). Defendant provides such service through an "on-call" procedure whereby physicians in the various specialties will re-

spond to a call from the hospital at any hour if a patient is in need of treatment and does not request a particular doctor.

**3.** The doctors named as defendants here had "staff privileges" at the hospital at the time of plaintiff's accident. A doctor with staff privileges may admit patients to the hospital, treat them there, and take emergency room calls for the hospital. Moskowitz Deposition at 9.

es in favor of the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. *See also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A motion for summary judgment is the appropriate vehicle "to isolate and dispose of factually unsupported claims or defenses" before trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). While the moving party bears the burden of demonstrating the absence of any factual dispute, *Donahue v. Windsor Locks Bd. of Fire Comm'rs,* 834 F.2d 54, 57 (2d Cir.1987), the non-moving party must come forward with "specific facts showing there is a genuine issue for trial" and not rely on "mere allegations or denials." Fed.R.Civ.R. 56(e). The burden is the same for cross-motions. *Knowles v. Postmaster General,* 656 F.Supp. 593, 597 (D.Conn.1987).

### 1. Actual Authority

Defendant moves for summary judgment on plaintiff's claim that it is liable for the alleged negligence of the doctors who treated plaintiff because the doctors were agents or employees of the hospital. According to the hospital, the defendant doctors were independent contractors, not employees, and, therefore, the hospital is not liable, under Connecticut law, for their negligence.[4]

Connecticut courts have long recognized a distinction between employees or agents and independent contractors with respect to imposing vicarious liability on the employer. *See, e.g., Beckenstein v. Potter & Carrier, Inc.,* 191 Conn. 120, 133, 464 A.2d 6 (1983); *Spring v. Constantino,* 168 Conn. 563, 573, 362 A.2d 871 (1975). *Alexander v. R.A. Sherman's Sons Co.,* 86 Conn. 292, 297, 85 A. 514 (1912). Under Connecticut law, "agency" is defined as "'the fiduciary relationship which results from manifestation of consent by one person to another that the other shall act on

his behalf and subject to his control, and consent by the other so to act.'" *Beckenstein,* 191 Conn. at 132, 464 A.2d 6, quoting Restatement (Second), 1 Agency § 1. By contrast, an "independent contractor" is "'one who, exercising an independent employment, contracts to do a piece of work according to his own methods and without subject to the control of his employer, except as to the result of his work.'" *Panaro v. Electrolux Corp.,* 208 Conn. 589, 604, 545 A.2d 1086 (1988), quoting *Alexander,* 86 Conn. at 297, 85 A. 514. Thus, the determination as to whether one is an employee or an independent contractor "depends on the existence or nonexistence of the right to control the means and method of work." *Beaverdale Memorial Park, Inc. v. Danaher,* 127 Conn. 175, 179, 15 A.2d 17 (1940). Liability will generally not be imposed on the employer for the negligence of an independent contractor because of the absence of the right to control. *E.g.,* D. Wright & J. FitzGerald, *Connecticut Law of Torts* § 67 (1968).

The determination of the existence or non-existence of the right to control, in turn, depends upon an examination of several factors. First, it is appropriate to consider whether the parties intended to form an agency relationship and thus the "operative terms" of any agreement between the parties should be examined. *Beckenstein,* 191 Conn. at 133, 464 A.2d 6; *Darling v. Burrone Bros.,* 162 Conn. 187, 195, 292 A.2d 912 (1972). Next, "independent ownership of a substantial enterprise" has been held to be an important factor to consider with respect to the issue of control, because "an independent owner is less likely to submit to the control of others in the operation of its business than a non-owner." *Beckenstein,* 191 Conn. at 137, 464 A.2d 6. An employer may exercise control over the general results and also the immediate results from time to time, without creating an agency relationship. *Darling,* 162 Conn. at 193, 292 A.2d 912.

---

**4.** Federal jurisdiction is based on diversity of citizenship and there is no dispute that Connect-

icut law governs the state law questions.

Other factors include: whether or not the person in question is engaged in a distinct occupation or business, *Beckenstein*, 191 Conn. at 137, 464 A.2d 6; the kind of occupation, with respect to whether the work is typically done under the direction of the employer or without supervision, as in the case of a specialist, *Northwestern Mut. Life Ins. Co. v. Tone*, 125 Conn. 183, 192, 4 A.2d 640 (1939); the skill required to perform the work, *Darling*, 162 Conn. at 193–97, 292 A.2d 912; and the method of payment, whether by the time or by the job, *Bourgeois v. Cacciapuoti*, 138 Conn. 317, 84 A.2d 122 (1951).

Whether and under what circumstances a physician should properly be classified as an agent or an independent contractor in the context of a hospital's vicarious liability for the doctor's negligence has not yet been considered by the Connecticut courts. Analogizing from the above-cited case law and from case law from other jurisdictions, defendant argues that Drs. Moskowitz and Calise were not agents, but, rather, were independent contractors and that, therefore, it cannot be held liable for their negligence.

■ Defendant has sufficiently established the status of Dr. Moskowitz as an independent contractor. Moskowitz did not receive any compensation from the hospital, nor any health insurance benefits typically given employees, nor did it carry malpractice insurance on him. Affidavit of Annette Hansell at 2.[5] *See also Hale v. Sheikholeslam*, 724 F.2d 1205, 1208 (5th Cir.1984) (doctor who had staff privileges but received no compensation from hospital is not an employee). Further, there is no evidence that the hospital exercised any control over the manner in which Moskowitz practiced medicine. Affidavit of Annette Hansell at 2. *See also Johnson v. St. Bernard Hosp.*, 79 Ill.App.3d 709, 35 Ill. Dec. 364, 369, 399 N.E.2d 198, 203 (1979) (where hospital did not pay emergency room physician a salary, summary judgment on the question of agency appropriate). For example, there is no indication that the hospital set Moskowitz's schedule or dictated what types of procedures he performed. Moreover, the record reveals that the hospital is not responsible for evaluating the quality of the medical care delivered by Moskowitz or any other doctor to whom it grants staff privileges. Rather, this evaluation is done by an "executive committee" made up of doctors with staff privileges. *Id.* at 3.

In addition, it is found that neither the hospital nor Moskowitz is shown to have believed they were creating an agency relationship when Moskowitz was granted staff privileges. *See* Moskowitz's Compliance with TPO, Section A.3(2); Affidavit of Annette Hansell at 6–7. There is no evidence of any contract between them to that effect. Rather, Moskowitz was a member of an independent "enterprise" in the form of a professional partnership, with offices in four locations in Connecticut, where he saw patients who were not hospitalized. *See Badeaux v. East Jefferson Gen. Hosp.*, 364 So.2d 1348, 1350 (La.App.1978) (summary judgment appropriate where emergency room physician a member of professional corporation which had contracted with hospital to provide services). From these offices, the partnership, not the hospital, billed for Moskowitz's services.

Thus, the only connection Moskowitz had with the hospital was that he had staff privileges there. The majority of the courts that have considered the question have found that this factor does not weigh in favor of a finding that the doctor is an agent. *See, e.g., Hale*, 724 F.2d at 1208; *Cooper v. Curry*, 92 N.M. 417, 589 P.2d 201, 203, *cert. denied*, 92 N.M. 353, 588 P.2d 554 (1978); *Reed v. Good Samaritan Hosp. Ass'n*, 453 So.2d 229, 230 (Fla.App. 1984) (a physician whose only connection with a hospital is that he or she has staff privileges is not an agent or employee of the hospital); *Evans v. Bernhard*, 23 Ariz. App. 413, 533 P.2d 721, 725 (1975) ("the fact that a physician or a surgeon is on a hospital's staff does not necessarily make him an employee of that hospital"); *Albain v. Flower Hosp.*, 50 Ohio St.3d 251, 553 N.E.2d 1038, 1044 (1990).

5. Annette Hansell is Senior Vice President of the hospital.

Plaintiff offers no relevant facts to counter defendant's evidence, nor does he cite any availing case law to the contrary.[6] Plaintiff relies on *Bing v. Thunig*, 2 N.Y.2d 656, 163 N.Y.S.2d 3, 143 N.E.2d 3 (1957), for the proposition that hospitals may properly be held liable for the negligence of doctors who practice there. He fails to note, however, that *Bing* distinguished between hospital staff who were employees and those who were not in concluding that the hospital could be liable for the negligence of a nurse who was found to be an employee. *Id.*, 163 N.Y.S.2d at 5, 143 N.E.2d at 4. Thus, there is no genuine issue of material fact as to Moskowitz's status as an independent contractor and, therefore, summary judgment in favor of defendant on this issue is granted.

▌ Like Moskowitz, Calise received no compensation or benefits from the hospital, nor did the hospital cover his malpractice insurance. Calise was also a member of an independent professional corporation—Anesthesia Associates of Willimantic, P.C.—although the group maintained an office for billing at the hospital. Patients were billed for anesthesia services directly by Anesthesia Associates, not the hospital.[7]

However, a contract existed between Anesthesia Associates and the hospital for the performance of anesthesia services. Anesthesia Associates was the only group given privileges at the hospital and was known at the hospital as "the anesthesia department." This contract, entitled "Anesthesiology Agreement 1955," was discovered recently in this litigation. In addition, a statement made by Annette Hansell suggests that there was also an oral agreement between the hospital and Anesthesia Associates, of which there is no further evidence.

The 1955 contract contains nothing to refute defendant's claim that Calise was an independent contractor. Specifically, the agreement states that there shall be a chief anesthesiologist who will be solely and fully responsible for all anesthetic care and service given at the hospital, for hiring other anesthesiologists to assist him, and for setting a fee schedule. Plaintiff claims that the agreement provision for the hospital's approval of the fees charged demonstrates that the hospital had the right to control. However, the right to seek approval cannot be read so broadly as to constitute the necessary degree of control over the rendering of services as to create an agency relationship. The fact that the hospital had the right to control the fees charged created no control over Calise's medical judgment with respect to the administration of anesthesia, which is at issue in this lawsuit. There is no evidence that Calise's medical judgment was to be exercised in any way other than independently.

Hansell's indication that there was, at some time, an oral agreement between the Anesthesiology Associates and the hospital is nothing but speculation to Calise's status. Even if such an agreement is presumed, there is no evidence of its terms nor that it gave the hospital any degree of control of Calise's conduct. Calise denies that he was aware of any such agreement. A decision on a motion for summary judgment cannot be premised on speculation that such an agreement raises a genuine issue of fact. Thus, summary judgment in favor of defendant on the issue of Calise's status as an independent contractor is granted.[8]

## 2. Apparent Agency

Alternatively, plaintiff argues the hospital should be liable for the doctors' alleged negligence on the theory of apparent agen-

**6.** Although plaintiff submits evidence with respect to the apparent agency theory of liability, that evidence is not relevant to the present discussion.

**7.** Plaintiff claimed that the hospital billed for anesthesia services. However, a review of the hospital's "bill" reveals that the charge was $0.00. The actual bill was sent by Anesthesia Associates.

**8.** There is also a document containing policies of the Department of Anesthesia which, for example, require anesthesiologists to take a medical history, order certain tests and medications, and follow instructions with respect to how long he or she must remain with the patient after surgery. It is not shown, however, that these policies originated with the hospital.

cy. No Connecticut court had apparently considered the question in the context of a hospital's vicarious liability for a staff physician's negligence until recently, when the superior court addressed it in *LeConche v. Elliners*, 4 Conn.L.Rptr. No. 14, 477, 1991 WL 144528 (August 19, 1991). In *LeConche*, plaintiff claimed the doctor who was allegedly negligent in treating her was either an agent or apparent agent of the hospital and that, therefore, the hospital could be held liable for such negligence. *Id.* In denying the hospital's motion for summary judgment on its claim that it could not be so liable, the court noted that the majority of jurisdictions which have considered the issue have held that a hospital may be liable on a theory of apparent agency and indicated a willingness to follow the majority. *Id.* at 479. Specifically, the court noted the Pennsylvania court's reasoning in *Capan v. Divine Providence Hosp.*, 287 Pa.Super. 364, 430 A.2d 647 (1980), which held that a physician, even if he or she is an independent contractor, may be an agent with respect to the patient. This conclusion was deemed justified by the changing role of hospitals in society which has "created a likelihood that patients will look to the institution rather than the individual physician for care." *Capan*, 430 A.2d at 649. It was further justified where the hospital "holds out" the physician as its employee, such as where the hospital acts or omits to act in some way which leads the patient to reasonably believe he is being treated by the hospital or one of its employees. *Id.* at 649.

■ The court in *LeConche* reiterated that, under Connecticut law, " '[a]pparent authority is that semblance of authority which a principal, through his own acts or inadvertence, causes or allows third persons to believe his agent possesses.' " *Id.*, quoting *Beckenstein*, 191 Conn. at 140–41, 464 A.2d 6. Thus, the acts of the principal rather than the agent must be considered in determining whether apparent authority existed. *Id.* In addition, the party seeking to impose liability on the principal must demonstrate that it acted in good faith based upon the actions or inadvertence of the principal. *Id.*

■ Such a theory is rife with speculation, suggesting the need for a more definitive reading of Connecticut laws. The record reveals some evidence that the hospital held the doctors out as its employees. For example, allowing the doctors to wear operating room clothing provided by the hospital with the name of the hospital printed on it, referring to the Anesthesiology Associates as the hospital's "anesthesia department," and failing to inform plaintiff that the doctors were not employees could be considered relevant to this conclusion. However, although plaintiff might have satisfied the first part of the test for apparent agency, that question need not be decided because he has failed to satisfy the reliance requirement. *See LeConche*, 4 Conn.L.Rptr. No. 14 at 477.

It is undisputed that plaintiff was brought to the hospital under emergency circumstances and that he did not choose to go to a particular hospital or be seen by a particular doctor. There is no evidence, for example, that plaintiff consented to treatment after the hospital led him to believe the doctors were hospital employees. *See Hathaway v. Tindall*, 497 So.2d 1272 (Fla. App.1986), *review denied*, 506 So.2d 1041 (Fla.1987). Although plaintiff complains that a reliance requirement will preclude many plaintiffs from demonstrating that the hospital is liable under an agency theory and cites case law from other jurisdictions which he claims have eliminated such requirement, the sole Connecticut case to address the issue has required proof of reliance. *See LeConche*, 4 Conn.L.Rptr. No. 14 at 478. Thus, as plaintiff has failed to show any evidence of reliance, his cross-motion for summary judgment is denied. Defendant's motion for summary judgment on this issue is granted.

### 3. Non-delegable Duty

■ An individual or corporation may have a non-delegable duty if it lawfully carries on an activity, pursuant to a franchise granted by public authority, which involves an unreasonable risk of harm to others. *Engelke v. Wheatley*, 148 Conn. 398, 405, 171 A.2d 402 (1961). Such

individual or corporation may be liable for bodily harm caused to others by the negligence of a contractor, employed for the purpose of carrying on the activity. *Id.* Plaintiff argues that the hospital had a non-delegable duty to provide non-negligent emergency and anesthesia services to him and, therefore, cannot avoid liability by claiming the doctors it provided to fulfill this duty were not agents or employees. Defendant claims this argument lacks merit because the hospital's duty was merely to provide a place for treatment, which is distinct from the doctors' duty, which is to provide the treatment itself.

The state regulations which permit hospitals to operate provide that a hospital must provide adequate care for persons in emergency situations at all hours. *See* Conn.Agencies Regs. § 19–13–D3(j)(2). In order to fulfill its obligation to provide adequate care, the hospital has established an "executive committee," composed of doctors with staff privileges, to review the quality of medical care administered there. Medical Staff By–Laws, Article VII § 2(B)(1) at 17. Thus, the hospital claims that it fulfilled its duty by providing a place for treatment and a mechanism through which qualified physicians will be granted staff privileges to administer such treatment. The doctors, defendant argues, are the only ones who, according to the regulations, may practice medicine and ensure that such practice is not negligent.

Defendant's reading of the law is credited. The hospital's duty is to provide a place for treatment and ensure the availability of treatment. The hospital is not necessarily charged with, nor has it undertaken, rendering or performing the actual care. The physician's duty is to administer medical care in a non-negligent manner. Although a hospital may be *directly* liable for its own negligence, if it grants non-qualified physicians staff privileges, and the physicians then commit malpractice, that theory has not been alleged nor briefed by plaintiff.[9]

Further, plaintiff cites no authority for the principle that the rendering of medical care creates an unreasonable risk of injury to others. It is not convincing that Connecticut law would so hold.

Plaintiff's motion for summary judgment on his claim of hospital liability for a non-delegable duty is denied.

*Conclusion*

Defendant's motion for summary judgment on the issue of actual agency of Moskowitz and Calise is granted. Defendant's motion for summary judgment on the issue of apparent agency is granted and plaintiff's cross-motion is accordingly denied. Plaintiff's motion for summary judgment on the issue of non-delegable duty is denied.

SO ORDERED.

---

9. This is known as the "corporate negligence" theory. *See Bader v. United Orthodox Synagogue,* 148 Conn. 449, 453, 172 A.2d 192 (1961);

*Thompson v. Nason Hosp.,* 591 A.2d 703, 707 (Pa.1991).