[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Florestine Taylor, brought this action against the defendant, Black Family Roundtable of Greater New Haven, Inc. and individual members of its Board of Directors, as well as against the Urban League. The Amended Complaint contains seven counts, six of which are directed to the Black Family Roundtable and its individual directors.
After the plaintiff rested, the plaintiff withdrew Counts One through Four as to all individual defendants and Count Five as to the defendants, Edwin Edmonds and James Comer. The court granted a Motion to Dismiss Count Six as well as Count Five as to the defendant, John Dow.
Counts One through Four are predicated on the theory that CT Page 10951 plaintiff was an employee of the Black Family Roundtable and, as such, was wrongfully terminated. Count Seven alleges that plaintiff, while an employee of the Black Family Roundtable, was treated as an employee by the Urban League and, as such, was wrongfully terminated by the Urban League.
Although plaintiff, in her brief, argues tortious interference on the part of the Black Family Roundtable with the plaintiff's employment with the Urban League, that legal theory does not appear in the pleadings. As defendant Black Family Roundtable points out, "(i)t is fundamental in our law that the right of a plaintiff to recover is limited to the allegations of his complaint." Nash Engineering Co. v. Norwalk, 137 Conn. 235,239 (1950). In the absence of any such pleading notifying defendant Black Family Roundtable of such claim, the court will not consider that as a basis for recovery. Furthermore, as is evident from the findings of fact, there was no evidence to support that claim.
What remains, then, are four counts directed against the Black Family Roundtable, consisting of theories of wrongful discharge, breach of duty of good faith and fair dealing, violation of Connecticut General Statutes 31-51q and failure to conduct a written job performance evaluation. The one count directed against the Urban League alleges wrongful discharge.
Based on the credible evidence produced at trial, the court finds the following facts proven by a fair preponderance of the evidence.
The plaintiff, Florestine Taylor, was hired by the Black Family Roundtable as its executive director beginning January 24, 1987, at an annual salary of approximately $25,000. Her job description noted that the Black Family Roundtable was "serving under the auspices of the Greater New Haven Urban League." At that time, the Black Family Roundtable was not incorporated. It did not have a tax exemption at any time during Florestine Taylor's employment.
The sole source of funding for the Black Family Roundtable was a grant from the Field Foundation. Because the Black Family Roundtable was not incorporated or tax exempt, grant funds from the Field Foundation payable to the Black Family Roundtable were deposited in an account at the Urban League. All expenses of the Black Family Roundtable, including plaintiff's salary and benefits were paid by the Urban League from Black Family Roundtable funds received from the Field Foundation.
The Board of Directors of the Black Family Roundtable continuously exercised control over Florestine Taylor's position. CT Page 10952
At the time she was hired, Florestine Taylor received a job description from the Black Family Roundtable. She was the sole employee of the Black Family Roundtable during her employment.
Dr. James Comer, as co-chair of the Black Family Roundtable, had the primary responsibility for supervising and directing Florestine Taylor. Earl Fraser, President of the Urban League and a member of the Board of the Black Family Roundtable, provided assistance to Florestine Taylor on administrative issues at Dr. Comer's request.
Florestine Taylor's office was on Urban League premises. Office space and support services were supplied by the Urban League to the Black Family Roundtable as an "in-kind" contribution. Plaintiff received Urban League payroll checks and full health coverage as a participant in the Urban Leagues CHCP insurance plan.
One of Florestine Taylor's responsibilities as Black Family Roundtable executive director was to develop administrative policies, including personnel policies, for the Black Family Roundtable. In April, 1988, Earl Fraser provided her with a copy of the Urban League Personnel Practices Manual ("Manual"), as a sample form.
In late April, 1988, plaintiff expressed criticism of Dr. John Dow, a member of the Board of the Black Family Roundtable in his capacity as Superintendent of Schools. That was brought to the attention of the Black Family Roundtable Board of Directors on May 31, 1988 by means of a letter from Dr. Dow.
In December, 1987 and June, 1988, Florestine Taylor was orally evaluated by Dr. Comer and Mr. Fraser. On both occasions, she was advised that her work performance was not satisfactory. In particular, the Board was not satisfied with her punctuality, follow-through, writing skills and attention to deadlines. At the June, 1988 meeting, Dr. Comer requested that she submit a proposed severance package to be presented to the Black Family Roundtable Board of Directors. Florestine Taylor advised Dr. Comer and Mr. Fraser that she would do so and would contact Dr. Comer, Mr. Fraser or the Black Family Roundtable within 10 days of the meeting. She failed to do so.
After the June, 1988 meeting, Florestine Taylor took two weeks of vacation leave and failed to return to work at the conclusion of her vacation. She was paid through August 4, 1988, at which time her employment was terminated by the Black Family Roundtable. CT Page 10953
On August 11, 1988, Earl Fraser, writing on behalf of the Board of Directors of the Black Family Roundtable, confirmed plaintiff's termination as an employee of the Black Family Roundtable. For purposes of unemployment compensation, plaintiff was listed as an employee by the Urban League and collected compensation in that capacity.
At all pertinent times Florestine Taylor was an employee of the Black Family Roundtable of Greater New Haven and not of the Urban League of Greater New Haven.
Florestine Taylor was terminated by the Black Family Roundtable primarily for job performance which was unsatisfactory to the Board of Directors, constituting just cause.
THE PLAINTIFF WAS AN EMPLOYEE OF THE BLACK FAMILY ROUNDTABLE AND NOT OF THE URBAN LEAGUE.
In determining whether or not an employer-employee relationship exists, the primary factors to consider are the powers to direct, control and supervise the employee. Cumbo v. E.B. McGurk, 124 Conn. 433, 435 (1938); Darling v. Burrone Bros., Inc., 162 Conn. 187 (1972). Whether a person is an employee is a question of fact. Electrolux Corp. v. Danaher, 128 Conn. 342
(1941).
Here the plaintiff was hired and discharged by the Black Family Roundtable. She was supervised primarily by Dr. Comer, a member of the Black Family Roundtable Board of Directors. She was also supervised by Earl Fraser, who had dual status, but who did so at the direction of Dr. Comer. Plaintiff's job description referred solely to her functions on behalf of the Black Family Roundtable.
The Black Family Roundtable clearly controlled and supervised plaintiff's work performance. It is true that certain factors normally characteristic of employer-employee status existed in plaintiff's relationship with the Urban League. However, it is clear that those factors reflected the sponsor-type relationship between the Black Family Roundtable and the Urban League and existed for reasons of convenience and necessity owing to the status of the Black Family Roundtable at that time. Thus, the provision of salary payments, health insurance and unemployment compensation benefits at the Urban League represented, not the existence of an employer-employee relationship, but merely a pragmatic, convenient way for the Black Family Roundtable to operate effectively during that period of time. For those reasons, the court concludes that the employment relationship of the plaintiff was with the Black Family Roundtable and not with the Urban League. The plaintiff, thus, has no basis on which to CT Page 10954 recover from the Urban League on her complaint.
FIRST COUNT: BREACH OF EMPLOYMENT CONTRACT.
The First Count alleges essentially that the Black Family Roundtable breached its employment agreement with plaintiff by virtue of its failure to accord to her all rights provided in the Personnel Practices Manual of the Urban League which was furnished to her after her employment had begun. In her brief, plaintiff attempts to convert these allegations into a claim of breach of employment agreement. It is clear that, given the circumstances under which the manual was given to plaintiff (to assist her in her work on behalf of the Black Family Roundtable), the Black Family Roundtable is not bound by the provisions of the manual. The plaintiff has failed to establish her cause of action contained in the First Count.
SECOND COUNT: BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING.
In the Second Count, the plaintiff alleges that the Black Family Roundtable breached a duty of good faith and fair dealing by failing to follow appropriate procedures for terminating plaintiff and by terminating her for improper reasons, namely, for exercising her First Amendment right of free expression. Plaintiff cites Sheets v. teddy's Frosted Foods, Inc., 179 Conn. 471
(1980) in support of this proposition. The court's finding of fact based on the persuasive evidence in this case clearly rule out recovery for the plaintiff on this theory. Plaintiff's unsatisfactory performance in the view of the Board of Directors was demonstrated the procedure followed to effectuate the decision to terminate was not deficient and, finally, there was no factual basis on which to conclude that plaintiff was discharged because she expressed her opinions about Dr. Dow. It may be realistic to assume that plaintiff's outspoken views may have exacerbated an already deteriorating employment relationship. However, the existence of what may have been a confrontational situation with some Board members, viewed in the context of her unsatisfactory performance as Executive Director, does not constitute wrongful discharge for exercise of First Amendment rights. The evidence presented leads the court to conclude that the plaintiff was terminated for just cause — unsatisfactory job performance according to the Board's standards — and not for her opinion expressed on the occasion in question. Plaintiff's evidence failed to establish that she was dismissed for a demonstrably improper reason constituting a violation of public policy.
THIRD COUNT: WRONGFUL DISCHARGE FOR EXERCISE OF CONSTITUTIONAL RIGHTS, CONNECTICUT GENERAL STATUTES 31-51q. CT Page 10955
In the Third Count, plaintiff claims violation of the above statute by the Black Family Roundtable.
That statute, in pertinent part, provides:
 Any employer . . . who subjects any employee to discipline or discharge on account of the exercise by such employee of rights guaranteed by the first amendment to the United States Constitution or Section 3, 4 or 14 of article first of the constitution of the state . . . shall be liable to such employee for damages caused by such discipline or discharge, including punitive damages, and for reasonable attorney's fees as part of the costs of any such action for damages. If the court determines that such action for damages was brought without substantial, justification, the court may award costs and reasonable attorney's fees to the employer.
The claims raised here have been discussed above. For the reasons stated, and based on the evidence presented, the plaintiff failed to prove that her discharge was attributable to her exercise of constitutional rights.
FOURTH COUNT: FAILURE TO CONDUCT WRITTEN JOB PERFORMANCE.
The allegations of this count, which sound in breach of duty to make a written job performance evaluation lacks support in the facts found by the court. There is no basis in law or fact for such alleged duty on the part of the Black Family Roundtable to be found here. Plaintiff, in her brief, has not specifically dealt with this allegation other than in the framework of a breach of contract claim. As no basis exists to support the theory presented in the Fourth Count, the plaintiff cannot recover.
For all the reasons stated, judgment may enter in favor of the Black Family Roundtable as to Counts One, Two, Three and Four of the complaint and in favor of the Urban League on Count Seven.
One additional issue remains to be discussed, namely, the counterclaim of the Black Family Roundtable seeking damages, consisting of attorneys' fees and costs, under C.G.S. 31-51q when an action is brought "without substantial justification." While the court has concluded that plaintiff failed to establish by a preponderance of the evidence her claims as to violation of C.G.S.31-51q, the proximity in time of the controversy concerning plaintiff's criticism of Dr. Dow, among other factors, persuades the court that the plaintiff did not lack "substantial CT Page 10956 justification" for bringing this action. Thus, the court, based on the findings previously made, enters judgment for the plaintiff on the counterclaim.
BARRY R. SCHALLER, JUDGE
[EDITORS' NOTE: THE CASE THAT PREVIOUSLY APPEARED ON THIS PAGE HAS BEEN MOVED TO CONN. SUP. PUBLISHED OPINIONS.] CT Page 10979